[Dkt. No. 43]

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

|  |  |
|---|---|
| KENNETH GUNTER, | |
| Plaintiff, | |
| v. | Civil No. 17-4217(RMB/KMW) |
| DETECTIVE ROBERT GRAY, | **OPINION** |
| Defendant. | |

**APPEARANCES:**

BARKER, GELFAND, JAMES & SARVAS, P.C.
By: A. Michael Barker, Esq.; Vanessa E. James, Esq.
Linwood Greene, Suite 12
210 New Road
Linwood, New Jersey 08221
    Counsel for Defendant, Detective Robert Gray

LAW OFFICES OF SURINDER K. AGGARWAL
By: Surinder K. Aggarwal, Esq.
86 Court Street
Freehold, New Jersey 07728
    Counsel for Plaintiff, Kenneth Gunter

**RENÉE MARIE BUMB**, UNITED STATES DISTRICT JUDGE:

    Plaintiff Kenneth Gunter brings this civil rights action against Defendant Detective Robert Gray, alleging that Detective Gray violated Plaintiff's federal and state constitutional rights in relation to his arrest and detention on June 18, 2015. In his Complaint [Dkt. No. 1], Plaintiff asserts claims for

False Imprisonment and False Arrest and Malicious Prosecution, pursuant to 42 U.S.C. § 1983, and violations of Plaintiff's rights under the New Jersey State Constitution and/or the New Jersey Civil Rights Act.  Now, this matter comes before the Court upon Detective Gray's Renewed Motion for Summary Judgment [Dkt. No. 43], which seeks dismissal of Plaintiff's Complaint in its entirety.  For the reasons set forth herein, Defendant's Motion for Summary Judgment will be **GRANTED** and Plaintiff's Complaint will be **DISMISSED WITH PREJUDICE**.

I.   **FACTUAL BACKGROUND**

Plaintiff's claims in this action arise from an altercation between Plaintiff and another individual, Mark Ball, which transpired at the Economy Motel Inn & Suites, at 15 MacArthur Boulevard in Somers Point, New Jersey (the "Economy Motel") and culminated in Plaintiff's arrest and detention.

At approximately 10:30 a.m. on June 18, 2015, Ball, a resident at the Economy Motel, approached the vehicle of Somers Point Police Patrolman James Shields and complained that he had been assaulted and that property had been stolen from him. Patrolman Shields radioed for Patrolman Shawn McKelvey, who responded to the scene.  Patrolman McKelvey's investigation report reflects Ball's statements to the officers:

> Mr. Ball stated that he had loaned $20.00 to a
> subject he knew as Kenny.  Kenny was said to live

2

in apartment 132 in the Economy Motel. At
approximately 09:00 hrs that morning, Mr. Ball went
to that subject['] apartment and confronted him
over wanting his $20.00 back. An argument then
ensued and during which the, the subject known as
Kenny grabbed the [victim] by the neck and pushed
him.

A short time later the victim, returned to his
residence at room 102 in the Economy Motel.

The victim further stated, that shortly after he
returned to his residence, the accused entered into
the victim's room without his permission and began
to assault him. According to the victim an argument
ensued and the accused again accosted him by
grabbing his throat and face. After a few moments,
the accused was said to have let go of the victim,
took two $20.00 bills and a cigarette off of his
bedroom table. The accused then left the residence
with said items. Additionally, the victim advised
that he had injuries to his neck and face. Upon
inspection, some scratches and redness were
visible.

Investigation Report, June 18, 2015, Patrolman Shawn G.

McKelvey [Dkt. No. 43-10].  Patrolman McKelvy further notes that

Ball was able to point out Plaintiff, who was walking around the

Economy Motel parking lot, as his assailant. Id.

Patrolman McKevely transported Ball to the Somers Point

Police Station, where Detective Gray asked Ball if he would be

willing to supply a taped statement. Supplementary Investigation

Report, June 19, 2015, Detective Robert S. Gray [Dkt. No. 43-11,

at 2-4]. As summarized in Detective Gray's Supplementary

Investigation Report, Ball provided a taped statement that, in

sum and substance, reaffirmed the statements that Ball relayed

to Patrolman Shields and Patrolman McKelvey. Id.  Ball also
provided a written statement and filled out a Stolen Property
Statement of Loss Report. Id.  After showing Ball a picture of
Plaintiff, who Mr. Ball confirmed was his assailant, Detective
Gray took photographs of Ball's injuries. Id.

As part of the investigation, Detective Captain Michael C.
Sweeney reported to the Economy Motel and reviewed video
surveillance footage from the motel parking lot. Supplementary
Investigation Report, Detective Captain Michael C. Sweeney, June
19, 2015 [Dkt. No. 43-11, at 5]  Captain Sweeney relayed to
Detective Gray that, based on his viewing, the video footage
confirmed that Plaintiff had "push[ed] Ball in the upper
chest/throat region" and that it also showed "Kenny going down
to Ball[']s room and entering in one fluid motion, indicating
that he didn't knock, but rather just went into his room." Gray
Investigation Report [Dkt. No. 43-11, at 3].

Detective Gray relayed the information obtained from Ball's
statements and Captain Sweeney's summary of the video footage
from the motel to Municipal Court Judge Howard Freed, who found
probable cause for the issuance of a warrant complaint against
Plaintiff a charge of burglary. Id.  Detective Gray then
generated the warrant complaint for burglary and a summons
complaint for theft and simple assault.  Shortly thereafter,

Plaintiff was taken into custody, where he apparently remained for approximately nine days, until he was able to secure bail.

Plaintiff's criminal complaints were referred to the Atlantic County Prosecutor's Office, which declined to indict Plaintiff on the charge of burglary and downgraded the charge to that of "defiant trespasser."  Plaintiff's case was returned to the Somers Point Municipal Court for disposition.  Ultimately, the criminal case was dismissed for lack of prosecution after Ball refused to comply with the Municipal Court's subpoena to show up to court and testify regarding the charges.

Plaintiff commenced this suit on June 13, 2017, alleging that Detective Gray's actions, which led to Plaintiff's arrest, violated his federal and state constitutional rights.  Defendant filed a previous motion for summary judgment [Dkt. No. 25], on January 26, 2018, which this Court denied as premature because Plaintiff had not been afforded the opportunity to depose Defendant. See Mem. Order, Aug. 31, 2018 [Dkt. No. 32].  Now, discovery is complete, and this matter comes before this Court once again upon Defendant's Renewed Motion for Summary Judgment [Dkt. No. 43].

## II.  <u>LEGAL STANDARD</u>

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might impact the "outcome of the suit under the governing law." Gonzalez v. Sec'y of Dept of Homeland Sec., 678 F.3d 254, 261 (3d Cir. 2012). A dispute is "genuine" if the evidence would allow a reasonable jury to find for the nonmoving party. Id.

The movant has the initial burden of showing through the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits "that the non-movant has failed to establish one or more essential elements of its case." Connection Training Servs. v. City of Phila., 358 F. App'x 315, 318 (3d Cir. 2009). "If the moving party meets its burden, the burden then shifts to the non-movant to establish that summary judgment is inappropriate." Id.

In the face of a properly supported motion for summary judgment, the nonmovant's burden is rigorous: he "must point to concrete evidence in the record"; mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. Orsatti v. New Jersey State Police, 71 F.3d 480, 484 (3d Cir. 1995); accord Jackson v. Danberg, 594 F.3d 210, 227 (3d Cir. 2010) (citing Acumed LLC. v. Advanced Surgical Servs., Inc., 561 F.3d 199, 228 (3d Cir. 2009)("speculation and conjecture may not defeat summary judgment").

III. <u>DISCUSSION</u>

Defendant argues that summary judgment is warranted because the undisputed evidence in the record, primarily the video footage from the Economy Motel's security cameras, establishes that Plaintiff's arrest was supported by probable cause.[1] In response, Plaintiff argues that the video footage is ambiguous and that the charges against him were not supported by probable cause because Detective Gray "knew that Ball's version of the incident was false."  After reviewing the evidence in the record, including Ball's statements to the police officers and the security footage, the Court finds that no reasonable jury could conclude that Detective Gray lacked probable cause to generate the warrant for Plaintiff's arrest.

A.  *The Security Footage*

In this case, the security footage from the Economy Motel is central to viability of Plaintiff's claims. Neither party disputes the authenticity of the footage, but both parties fiercely dispute the meaning and significance of the content. As such, the Court has reviewed the video footage for purposes of this Motion for Summary Judgment and objectively summarizes

---

[1] Defendant also argue that Plaintiff's claims are barred under the doctrine of qualified immunity.  Because this Court finds that summary judgment is warranted on the merits, the Court need not reach the issue of qualified immunity.

the elements of the footage that cannot be "reasonably" disputed.

As demonstrated in the videos, on the morning of June 18, 2015, Mark Ball approaches the door to Plaintiff's motel room. Ball proceeds to knock or bang on Plaintiff's door and then steps a few feet back from the door.  An individual wearing a football jersey, whom the parties identify as Plaintiff, exits the room and begins exchanging words with Ball.  After a few exchanges, Ball appears to be moving away from Plaintiff when Plaintiff suddenly grabs Ball by the neck and pushes him backwards, at which point the two are not visible in the video frame.[2]  For a few moments, Plaintiff and Ball remain outside the frame, but Plaintiff soon returns to the frame and walks towards his wife and son, who have stepped outside the room to watch the unfolding altercation. Plaintiff, along with his wife and son then walk back towards their motel room.  Ball reenters the

---

[2] The video evidence directly, and unequivocally, contradicts Plaintiff's allegation in the Complaint that Ball "broke through the latch locking the door" while "attempting to break into their room" and that Plaintiff "immediately moved toward the door, grabbed Ball and brought him to the ground." See Compl., at ¶¶ 5-7.  Indeed, the video evidence demonstrates that Ball made no attempt to break into Plaintiff's room and, in fact, stepped a few feet away from the doorway after banging on the door.  Ball and Plaintiff exchange words outside the room before Plaintiff violently grabs Ball by the throat.  Despite the clear contradiction between the video evidence and the allegations in the Complaint, Plaintiff never amended his complaint to conform with the evidence obtained through discovery.

frame and appears to yell something at Plaintiff before heading back towards his own motel room on the opposite end of the motel.

Shortly after Ball returns to his motel room, Plaintiff leaves his room and starts walking in the direction of Ball's room. The video demonstrates that Plaintiff walks to the end of the row of rooms, turns, and appears to enter Ball's room without breaking stride or knocking. It is unclear if the door to Ball's room is open or simply unlocked, but Plaintiff does not appear to knock or stop in the doorway.[3] After a little over a minute, Plaintiff emerges from Ball's room and proceeds towards the motel office.[4] While walking towards the office,

---

[3] Plaintiff misleadingly contends that Detective Gray admitted during his deposition that the recordings "do not depict Plaintiff entering Ball's room." See Pl.'s Statement of Undisputed Material Facts [Dkt. No. 47-3], at ¶ 19. However, this statement is taken out of context. Detective Gray merely acknowledged that because the video is taken from a long angle, it is unclear whether Ball and Plaintiff turned and entered Ball's motel room, or instead turned and disappeared behind the end corner of the motel  This distinction is irrelevant, since Plaintiff admits that he entered Ball's motel room. Id. at ¶ 12. Thus, there can be no genuine dispute that the turning motion observed on the video is Plaintiff turning to enter Ball's room.

[4] This Court takes no position as to the truth or falsity of Plaintiff's allegations about what may, or may not have, occurred in Ball's room. The Court simply takes notice that the video undisputedly confirms that Plaintiff followed Ball back to Ball's motel room, entered the room, and reemerged a little over a minute later.

Plaintiff stops at least once to take an extended look backwards over his right shoulder in the direction of Ball's room.

**B.   *False Arrest and False Imprisonment***

Plaintiff's first count alleges that "Detective Gray's actions resulted in Plaintiff being unlawfully detained, falsely arrested and falsely imprisoned, thereby depriving Plaintiff of his right to be free from an unreasonable seizure of his person, in violation of the Fourth Amendment to the United States Constitution" Compl., at ¶ 22.  On the Motion for Summary Judgment, Defendant argues that the video evidence from the Economy Motel, which was consistent with Mark Ball's accusations against Plaintiff, establishes that Plaintiff's arrest was supported by probable cause. This Court agrees with Defendant.

A plaintiff alleging Fourth Amendment claims for false arrest and false imprisonment is required to establish that the arrest was made without probable cause. See Berry v. Kabacinski, 704 Fed.Appx. 71, 73 (3d Cir. 2017)(citing Groman v. Twp. of Manalapan, 47 F.3d 628, 634, 636 (3d Cir. 1995)).  The Third Circuit has recognized that "[p]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Holmes v. McGuigan, 184 F. App'x

149, 150 (3d Cir. 2006))(quoting Orsatti v. New Jersey State
Police, 71 F.3d 480, 483 (3d Cir. 1995)).  Furthermore, although
the question of probable cause is generally a question for the
jury, a district court may conclude on summary judgment "that
probable cause exists as a matter of law if the evidence, when
viewed in the light most favorable to the plaintiff, reasonably
would not support a contrary factual finding." Merkle v. Upper
Dublin Sch. Dist., 211 F.3d 782, 788–789 (3d Cir. 2000)(internal
quotation marks and citation omitted).

In this case, Plaintiff was arrested and charged with
burglary, in violation of N.J.S.A. 2C:18-2A(1),[5] simple assault,
in violation N.J.S.A. 2C:12-1A,[6] and theft by unlawful taking or
disposition, in violation of N.J.S.A. 2C:20-3A.[7]  In relation to
these charges, this Court finds that Ball's repeated statements

---

[5] A person is guilty of burglary, under N.J.S.A. 2C:18-2A(1), if
"with purpose to commit an offense therein or thereon he enters
a... structure, or a separately secured or occupied portion
thereof unless the structure was at the time open to the public
or the actor is licensed or privileged to enter."

[6] In relevant part, a person is guilty of simple assault, under
N.J.S.A. 2C:12-1A, if he "attempts to cause or purposely,
knowingly or recklessly causes bodily injury to another; or…
attempts by physical menace to put another in fear of imminent
serious bodily injury."

[7] A person is guilty of unlawful taking or disposition, under
N.J.S.A. 2C:20-3A, if "he unlawfully takes, or exercises
unlawful control over, movable property of another with purpose
to deprive him thereof."

to police that Plaintiff entered his motel room without permission, struck him, and stole forty dollars and a cigarette, when combined with video evidence that (at least circumstantially) corroborates many of Ball's accusations, created sufficient probable cause for Detective Gray's decision to charge and arrest Plaintiff.

Plaintiff seemingly implies that the video footage is exculpatory, and that Detective Gray was somehow unethical in relying upon Detective Captain Sweeney's summary of the footage, rather than viewing the footage himself, when Detective Gray sought probable cause for issuance of an arrest warrant from Judge Freed.  Plaintiff, however, fails to explain why it was improper for Detective Gray to rely upon the summary of the video provided by Detective Captain Sweeney, who was Detective Gray's superior officer.  Furthermore, this Court's review of the video footage confirms that Detective Captain Sweeney provided Detective Gray with a reasonably accurate description of the video content.  To that end, the video footage is in no way exculpatory.  On the contrary, it circumstantially corroborates Ball's account of the events.

Although some of the evidence relied upon by Detective Gray was circumstantial, that fact does not defeat probable cause. See Paredes v. Egg Harbor Twp. Bd. of Educ., 2018 WL 3930087, at *14 (D.N.J. Aug. 16, 2018)("A determination of probable cause--

or even the much higher burden of guilt beyond a reasonable doubt--may be satisfied by the consideration and acceptance of circumstantial evidence"). Furthermore, even if the evidence obtained at the time of Plaintiff's arrest would not have been enough to convict Plaintiff, the burden for establishing that an arresting officer reasonably believed that an offense was being committed at the time of the arrest is a significantly lower burden than proving guilt at trial. Wright v. City of Phila., 409 F.3d 595, 602 (3d Cir. 2005).

In this case, it is not relevant, and neither the Court nor a jury need determine, whether Ball was telling the officers the truth about Plaintiff bursting into his motel room, where Plaintiff allegedly attacked and robbed Ball.  The only consideration is whether the evidence available to the police officers at the time the warrants were generated, and Plaintiff was arrested, created an objectively reasonable belief that an offense had been committed.  To that end, the Court finds that Detective Gray's belief that Plaintiff had committed the crimes charged was objectively reasonable, and supported by, Ball's statements to police, the observed injuries to Ball's neck, and the (at least partially) corroborating video evidence.  No reasonable jury could conclude otherwise.  Thus, Plaintiff's claim of false arrest and false imprisonment will be dismissed.

C.   *Malicious Prosecution*

Plaintiff's second claim, for malicious prosecution, states that Detective Gray "lacked probable cause to initiate a criminal proceeding against Plaintiff." Compl., at ¶ 25.  To prevail on a claim for malicious prosecution brought under 42 U.S.C. § 1983, a plaintiff must satisfy each of the following five elements: "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." Minatee v. Philadelphia Police Dep't, 502 F. App'x 225, 227 (3d Cir. 2012)(quoting Kossler v. Crisanti, 564 F.3d 181, 186 (3d Cir. 2009)(en banc)).  Furthermore, "the establishment of probable cause as to any one charge [of several charges] is sufficient to defeat ... Fourth Amendment claims," including claims for malicious prosecution. Startzell v. City of Phila., 533 F.3d 183, 204 n. 14. (3d Cir. 2008).

Although Plaintiff has established that the criminal charges brought against him were ultimately dismissed, those charges were not dismissed on the merits or for a lack of probable cause.  Rather, the charges were dismissed for failure

14

to prosecute because the accuser, Ball, refused to show up to Court and testify against Plaintiff.  As discussed above, at the time of the arrest, Ball repeatedly provided officers with consistent statements alleging that Plaintiff broke into his motel room, assaulted him, and robbed him.  Additionally, Ball's statements were circumstantially corroborated and supported by injuries to Ball's neck and security footage from the motel.  As such, no reasonable jury could conclude that Detective Gray lacked probable cause to arrest and charge Plaintiff.

   **D.   *New Jersey State Constitution and Civil Rights Claims***

   Finally, Plaintiff also asserts claims against Defendant for violations of the New Jersey State Constitution and the New Jersey Civil Rights Act ("NJCRA"), N.J.S.A. § 10:6-2.  The NJCRA was "modeled after 42 U.S.C. § 1983, and creates a private cause of action for violations of civil rights secured under the New Jersey Constitution." See Trafton v. City of Woodbury, 799 F.Supp.2d 417, 443-44. (D.N.J. 2011); Castillo-Perez v. City of Elizabeth, 2014 WL 1614845, at *9 (D.N.J. Apr. 21, 2014). Notably "[t]his District has uniformly interpreted the NJCRA in parallel with Section 1983 and read the two as coextensive." Sharif v. City of Hackensack, 2018 WL 5619721, at *7 (D.N.J. Oct. 29, 2018)(citing Estate of Lydia Joy Perry ex rel Kale v. Sloan, 2011 WL 2148813, at *2 (D.N.J. May 31, 2011)(collecting

cases)).   Accordingly, because Plaintiff has not suggested any distinction between his claims under the NJCRA and the parallel provisions of 42 U.S.C. § 1983, Plaintiff's NJCRA claim will be dismissed for the same reasons as his § 1983 claims.

**IV.   <u>CONCLUSION</u>**

For the foregoing reasons, Defendant's Motion for Summary Judgment will be **GRANTED**.   Plaintiff's Amended Complaint will be **DISMISSED** with prejudice.   An appropriate Order shall issue on this date.

DATED: July 30, 2020

s/Renée Marie Bumb
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE
